UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JERRY DAVIS,

               Plaintiff,

v.                            Case No. 3:11-cv-1158-J-39PDB

OFFICER C. HODGES,
etc.; et al.,

               Defendants.

_____

**ORDER**

**I. Status**

Plaintiff, an inmate of the Florida penal system who is proceeding pro se, is proceeding on an Amended Civil Rights Complaint (Amended Complaint) (Doc. 56).[1] The remaining Defendants are correctional officers or former correctional officers who were employed at Union Correctional Institution (UCI) in July, 2009: (1) Clinton Hodges; (2) Joshua Olive; (3) Robert Thurman; and (4) Maurice Griffin. Plaintiff claims that his rights under the Eighth Amendment were violated on July 24, 2009, when these Defendants failed to prevent or intervene in a fight between an inmate, Jesse "Flame" Harrell, and Plaintiff. In addition, Plaintiff claims that Defendants Hodges and Oliver were deliberately indifferent to his health and safety, in violation of the Eighth Amendment, when they incited, encouraged and allowed Plaintiff to be assaulted by

_____

[1] In this opinion, the Court references the document and page numbers designated by the electronic filing system.

another inmate.    Finally, Plaintiff contends that these four Defendants entered into a conspiracy to arrange for or encourage the fight between Harrell and Plaintiff, depriving Plaintiff of his Eighth Amendment right against cruel and unusual punishment. Plaintiff seeks compensatory damages.[2]

This cause is before the Court on Defendant, Maurice Griffin's Motion for Summary Judgment (Griffin's Motion for Summary Judgment) (Doc. 112) and Defendant's Notice of Filing Deposition Transcripts in Support of Defendant's Motion for Summary Judgment (Doc. 111).[3] It is also before the Court on Defendants' [Thurman, Olive, and Hodges] Motion for Summary Judgment (Defendants' Motion for Summary Judgment) and Appendix (Doc. 113).[4]  The Court previously advised Plaintiff of the provisions of Fed. R. Civ. P. 56, and gave him an opportunity to respond.    See the Court's Order (Doc. 119). Plaintiff has responded.    See Plaintiff's Response and Memorandum of Law in Opposition to [Defendants'] Motion for Summary Judgment (Doc. 122), Plaintiff's Response and Memorandum of Law in

---

[2] The Eleventh Circuit, in its decision of July 13, 2012, found that the disciplinary report's finding that Plaintiff and Harrell were head-butting and pushing each other, did not contradict Plaintiff's claims that prison officers conspired to place Plaintiff in the situation, they incited Harrell to attack him, and they failed to intervene.  See Opinion No. 11-15870 (Doc. 18) at 6.

[3] The Court will refer to the exhibits as "Griffin's Ex."

[4] The Court will refer to the appendices submitted in support of Defendants' Motion for Summary Judgment as "Ex."

Opposition to Griffin's Motion for Summary Judgment (Response to Griffin) (Doc. 123), and Appendix - Plaintiff's List of Exhibits in Response to Summary Judgment (Doc. 124).[5]  Thus, the motions for summary judgment are ripe for review.

## II.  Summary Judgment Standard

"Summary judgment is appropriate only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  <u>Moton v. Cowart</u>, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  "If the moving party meets this burden, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'"  <u>Ekokotu v. Fed. Exp. Corp.</u>, 408 F. App'x 331, 333 (11th Cir.) (per curiam) (quoting <u>Fickling v. United States</u>, 507 F.3d 1302, 1304 (11th Cir. 2007)), <u>cert</u>. <u>denied</u>, 132 S.Ct. 420 (2011).

## III.  Summary of Arguments

In their motions for summary judgment, Defendants address the following issues: deliberate indifference - inmate fights (failure to prevent and failure to intervene); the conspiracy claim; and qualified immunity.  After first briefly reviewing the allegations in the Amended Complaint, the Court thereafter addresses these matters.

---

[5] The Court will refer to the exhibits submitted in support of Plaintiff's responses as "P. Ex."

3

### IV.  The Amended Complaint

Plaintiff presents his claims as follows:

> Plaintiff Jerry Davis claims that Defendants Hodges, Olive, Thurman, Griffin, and Carrasquillo[⁶] violated his rights under Title 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution when they engaged in a conspiracy to deprive him of his right to be free from physical assault from another inmate by reaching an understanding to deny him that right, and that they exercised deliberate indifference to his health and safety by failing to protect him from the assault that they witnessed or were on notice of.
>
> Defendant Hodges' deliberate indifference to Plaintiff's health and safety was further demonstrated when he instigated, directed, and allowed the assaulting of Plaintiff by another inmate in his presence, he had deliberately walked upstairs to the other inmate's cell and let that inmate out of the cell to assault Plaintiff in the day room.
>
> Defendant Olive's deliberate indifference to Plaintiff's health and safety was further demonstrated when he incited, encouraged, and allowed the assaulting of Plaintiff by another inmate in his presence, he had deliberately unlocked and opened the day room door for the other inmate and permitted him to enter to assault Plaintiff.

Amended Complaint at 8, 15-16.

Plaintiff alleges the following.  On July 24, 2009, he was confined in UCI, U-dormitory, Quad 2, cell U2-106.  <u>Id</u>. at 8.  At approximately 8:05 a.m., Defendant Thurman approached Plaintiff's

---

⁶ The Court dismissed Defendant Sgt. Hector Carrasquillo from this action on December 12, 2013.  Order (Doc. 92).

4

cell to sign Plaintiff in for a level two mental health group session to be held in the day room of Quad 2.  _Id_.  Plaintiff confirmed that he was attending the session.  _Id_.  Inmate Michael McMillon, in the cell next to Plaintiff, said: "If you let Jerry and Flame (Inmate Jesse Harrell) out together, they are going to get into a fight."  _Id_. at 9.  Thurman asked why, and McMillon said it was because they had an argument last night.  _Id_.  Thurman said he would look into the matter and departed.  _Id_.

At this point, Thurman exited the Quad door and proceeded to the dormitory entrance hallway.  _Id_.  Thurman then conspired with Defendants Hodges, Olive, and Griffin to have someone fight Plaintiff.  _Id_.  Griffin, however, said he did not want to have anything to do with it and was going to go in there and do his job. _Id_. at 17.

Defendants Hodges, Griffin, Olive, and Thurman pulled inmates out of their cells for level two mental health group.  _Id_.  Hodges and Griffin arrived at Plaintiff's cell, and Hodges applied handcuffs behind Plaintiff's back and entered Plaintiff's cell. _Id_.  Plaintiff told Hodges that "Flame" had threatened to beat him and take his canteen the night before.  _Id_.  Plaintiff asked Hodges to not let "Flame" out of his cell.  _Id_.  Hodges applied handcuffs, a black box, waist chains, and leg shackles on Plaintiff.  _Id_. Hodges then told Plaintiff the officers had talked about him, and Plaintiff was going to "get it for going out all that law on us."

Id. at 18.  Defendants Thurman and Olive were in front of a nearby cell.  Id.  Thurman said an inmate in a cell did not want to come out, so they did not have someone "to go on him."  Id.  Hodges said he would find someone.  Id.  Hodges and Plaintiff exited Plaintiff's cell.  Id.  Defendant Griffin escorted Plaintiff to the day room.  Id.

Hodges asked who will "go on Jerry?"  Id.  Inmate McMillon reiterated that "Flame" and Plaintiff had an argument the night before.  Id.  Hodges asked the location of "Flame."  Id.  McMillon told him "Flame" was upstairs.  Id.  Griffin commented that they were up to something, locked Plaintiff in the day room, and walked away.  Id.

Defendant Hodges went upstairs and asked which inmate was "Flame."  Id. at 18-19.  Jesse Harrell responded "[r]ight here."  Id. at 19.  Hodges ask Harrell if he would "get him for us?"  Id.  Harrell responded in the affirmative.  Id.  Hodges and another officer let Harrell out of his cell.  Id.

Defendant Olive and inmate Harrell approached the day room door, and Olive asked Harrell if he was "going to get him for us?"  Id.  Again, Harrell responded affirmatively.  Id.  Harrell said he was EOSing (soon to be released from prison), and he did not care.  Id.  Plaintiff pleaded with Defendant Olive not to let Harrell into the day room.  Id.  Defendant Olive unlocked and opened the day room door.  Id.  He allowed Harrell to enter the day room.  Id.

6

Harrell rushed into the day room and attacked Plaintiff. Id. at 20. He knocked Plaintiff against a metal television stand, causing severe injuries to Plaintiff's right ear. Id. While Harrell head-butted Plaintiff, Defendant Olive closed and locked the day room door. Id. Defendant Olive stood outside, by the window of the day room door, watching Plaintiff being attacked by Harrell. Id. Defendant Hodges told Defendant Olive not to stand at the door watching and to move around. Id. Defendant Olive went out through the quad door and watched through a side window, failing to stop the attack. Id. Finally, Harrell said Plaintiff's ear was hanging off, and Harrell backed off from Plaintiff. Id. at 21.

When Defendant Olive observed that the attack was over, he returned to the day room, unlocked the door and opened it. Id. Defendant Olive praised Harrell, and then Harrell and Defendant Olive left Plaintiff in the day room. Id. Ten minutes later, Defendants Olive and Griffin returned to the day room. Id. Defendant Olive asked who should take Plaintiff to medical, and Defendant Griffin said Defendant Olive should because he was present during the incident. Id. Defendant Olive escorted Plaintiff to medical. Id.

A medical technician, M. Bestoso, assessed Plaintiff's injuries and concluded that Plaintiff suffered from a severely lacerated and bleeding right ear wound. Id. at 21-22. The wound was treated and Plaintiff was sent to the emergency room for

further treatment. <u>Id</u>. Doctor G. Espino surgically joined Plaintiff's torn right ear with sutures. <u>Id</u>. Plaintiff received Rocephin injections and a prescription for 600 milligrams of Ibuprofin. <u>Id</u>. Nurse C. Mercer tended to the wound after surgery. <u>Id</u>. On a daily basis, from July 24, 2009 through August 6, 2009, Plaintiff went to medical for cleansing of the ear wound, application of bacitracin ointment, and new bandages. <u>Id</u>. On August 7, 2009, the sutures were removed. <u>Id</u>. at 22-23.

Plaintiff states he suffered from multiple physical injuries, including the severe ear wound, severe bleeding, severe earaches and dizziness, and permanent disfigurement of his ear. <u>Id</u>. at 24. Plaintiff complains that he could not sleep on his right ear for several months and he suffered from extreme emotional distress from the incident. <u>Id</u>.

### V. Law and Conclusions

#### A. Eighth Amendment

The Court construes Plaintiff's Complaint to be an action under 42 U.S.C. § 1983. In order to prevail in section 1983 action, Plaintiff must demonstrate: "(1) that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing <u>Arrington v. Cobb Cnty.</u>, 139 F.3d 865, 872 (11th Cir. 1998)). Here, Plaintiff claims he was subjected to an assault

8

by another inmate due to the Defendants inciting the other inmate to fight Plaintiff; placing the inmate in a confined, locked space with Plaintiff; and failing to intervene in the attack or to prevent the attack upon notice of the existing animosity between inmate Harrell and Plaintiff.   Plaintiff claims this alleged failure to ensure a safe environment subjected him to cruel and unusual punishment in violation of the Eighth Amendment.   Complaint at 8, 15.   "The Eighth Amendment of the United States Constitution forbids 'cruel and unusual punishments.' U.S. Const. amend. VIII. The Eighth Amendment is applicable to the states through the Fourteenth Amendment."   Bingham, 654 F.3d at 1175 (citation omitted).

Plaintiff claims Defendants Hodges, Olive, Thurman and Griffin were deliberately indifferent to his safety by failing to protect him from an assault by an inmate, and that they either witnessed the assault and had an opportunity to intervene and failed to do so or were put on notice that it would happen after they were apprised of the threats by inmate Harrell against Plaintiff and placed Plaintiff in a position to be attacked or failed to act to prevent inmate Harrell's placement in the day room.   Plaintiff alleges Defendant Hodges failed to ensure a safe environment for prisoners, free from victimization, by instigating, directing and allowing Plaintiff to be assaulted by another inmate.   Plaintiff alleges Defendant Olive failed to ensure a safe environment, free from

victimization, by inciting, encouraging and allowing another inmate

to assault Plaintiff in Olive's presence by unlocking the day room

door and allowing inmate Harrell to enter the day room and attack

Plaintiff, knowing that inmate Harrell posed a threat to Plaintiff.

Plaintiff presents the sworn Declaration of inmate Michael

McMillon, and McMillon attests:

> On July 24, 2009, while I was housed in cell
> U2-105 next door to Jerry Davis, when Officer
> R. Thurman stopped at Jerry's cell door to
> sign him up for group activities.  I told
> Officer R. Thurman that if he let Jerry and
> Flame out together, they were going to get in
> a fight.  He replied that he would look into
> it.
>
> Later than morning, when Officers C.
> Hodges and M. Griffin came to pull Jerry for
> group in the dayroom, I told Officer C. Hodges
> that Jerry and Flame had an argument last
> night.  I also told him that Flame lived up
> stairs.
>
> After that, I saw Officer C. Hodges leave
> from by Jerry's cell and walk up stairs to get
> Flame and let him out of his cell.  I also saw
> Officer J. Olive let Flame in the day room.
>
> Later that afternoon, I saw Jerry return
> to his cell with bandages on his right ear.

P. Ex. F (enumeration omitted).

Along with his sworn Amended Complaint, Plaintiff also relies

on his own sworn Declaration.[7]  He attests:

---

[7] Defendants' Joint Motion to Strike (Doc. 126), requesting
the Court strike the unsworn answers of James McCallister, Edward
Brown, Ramon Maldonado, and Brian Baldwin to written deposition
questions, is pending before the Court.  Plaintiff's exhibits B, C,
D, and E do not contain sworn responses.  P. Ex. B, C, D & E.

On July 24, 2009, I was housed at Union
Correctional Institution in U-Dormitory, cell
U2106. I overheard an inmate in a nearby cell
inform Officer Thurman that Jerry and Flame
(Harrell) would get into a fight if they were
let out of their cells together. I also
informed Officer Hodges in my cell that Jesse
"Flame" Harrell had made threats against me.
I also heard Officer Hodges incite Inmate
Harrell to fight me.

On July 24, 2009, I and inmate Ramon
Maldonado were locked in the day room for a
group therapy session. Officer Olive brought
Inmate Harrell to the day room door. I
pleaded behind the safety of the day room door
with Officer Olive to not let Inmate Harrell
into the day room because he wanted to fight.
I heard Officer Olive encourage Inmate Harrell
to fight me. Olive then unlocked and opened
the day room door for Inmate Harrell to enter
to assault me. Harrell rushed into the day
room and violently attacked me, causing me to
suffer multiple physical injuries.

Defendants Thurman, Hodges and Olive
engaged in a Title 42 U.S.C. Section 1983
conspiracy to deny me of my right to be free
from an inmate assault, as evidence [sic] by
their conspiratorial conversation wherein they
reached an understanding to get another inmate
to assault me.

P. Ex. G at 2-3 (enumeration and citations omitted).

---

Unsworn statements cannot be considered by this Court in addressing
a summary judgment motion. Carr v. Tatangelo, 338 F.3d 1259, 1273
n.26 (11th Cir. 2003). Defendants request that the exhibits be
stricken is due to be granted. Since unsworn answers "plainly do
not pass summary judgment muster[,]" MacDonald v. Circle K Stores,
Inc., No. 6:08-cv-1825-Orl-22DAB, 2009 WL 113377, at *1 (M.D. Fla.
Jan. 16, 2009), Plaintiff's exhibits B, C, D and E will not be
considered by the Court. Of note, these responses do not satisfy
the requirements of 28 U.S.C. § 1746, as the responses are not
provided under the penalty of perjury.

Defendants Hodges, Olive and Thurman offer their own declarations and the declaration of inmate Jesse Harrell to support their Motion for Summary Judgment.  Defendant Griffin has not offered a sworn declaration or any sworn responses to the Amended Complaint.  Plaintiff challenges the Declarations of inmate Harrell (stating no officers were involved in the incident or were aware of any previous dispute between inmate Harrell and Plaintiff); Defendant Hodges (stating he was not present on the quad during the fight); Defendant Thurman (stating he was not present on the quad during the fight); and Defendant Olive (stating no other officers witnessed the fight), and claims they are untrue.  Id. at 4-5.  Plaintiff concedes that he does not have sufficient evidence to support a conspiracy claim against Defendant Griffin.  Response to Griffin at 9.  Thus, the Court will grant summary judgment to Defendant Griffin with respect to the conspiracy claim raised against him.

The sworn Declaration of Jesse Harrell includes an attachment that Harrell incorporates by reference.  Ex. L.  Harrell attests that the incident in the day room was an isolated incident that did not involve any other persons.  Id. at 2.  He further claims that the argument on the wing the night before was between Plaintiff and another inmate, the officers were unaware that Plaintiff had a problem with the other inmate, and the Plaintiff's attack on Harrell was apparently a case of mistaken identity.  Id.

In pertinent part, Defendant Olive's sworn Declaration states:

> On July 24, 2009, I was assigned as a corrections officer to U Dorm.  That morning at approximately 8:35 a.m., I entered quad 2 to assist other corrections officers in escorting inmates from their cell [sic] to the morning activity room.  At that time, I observed Inmate Davis and Inmate Jesse Harrell (DC# W14166) in the group room head butting each other and pushing each other against the wall.  I ordered both inmates to cease their actions, and both complied.

Ex. E at 1 (enumeration and citations omitted).  Defendant Olive further states that no other officers witnessed the incident in the day room.  Id.  He states the only other witness was inmate Ramon Maldonado.  Id.

Defendant Thurman, in his Declaration, states that he has no recollection of the fight between Plaintiff and inmate Harrell. Ex. F at 1.  He further states that at the time of the fight, 8:35 a.m., he would have been escorting inmates to various destinations in the institution.  Id. at 2.  Defendant Hodges, in his Declaration, states that he too has no recollection of the fight between Plaintiff and inmate Harrell.  Ex. G at 1.  He also mentions that at the time of the fight, 8:35 a.m., he would have been escorting inmates to various destinations in the institution. Id. at 2.

Defendant Griffin did not provide the Court with a sworn declaration; however, Plaintiff admits that Defendant Griffin is entitled to summary judgment with respect to the conspiracy claim.

Plaintiff contends that his Eighth Amendment claim against Defendant Griffin is still viable because Defendant Griffin overheard Plaintiff informing Defendant Hodges that inmate Harrell had made recent threats to attack Plaintiff. Response to Griffin at 2; Griffin's Ex. A at 112; Amended Complaint at 17-18. Plaintiff alleges that Defendant Griffin also overheard the officers discussing finding someone to fight Plaintiff. Response to Griffin at 2-3; Griffin's Ex. A at 112-13. Finally, Plaintiff complains that Defendant Griffin exited the wing, allowing Plaintiff to be left in a vulnerable position to be assaulted by inmate Harrell. Response to Griffin at 2-3; Griffin's Ex. A at 112-14.

Prison officials have a duty to protect inmates from violence, including assault from inmates. To prove a prison official violated the Cruel and Unusual Punishments Clause, there has to be a showing that the prison official had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted). In prison condition cases, the culpable state of mind is "deliberate indifference" to the health or safety of the inmate. Id. (citations omitted). The seminal Supreme Court case on deliberate indifference to a prisoner's safety is Farmer. In Farmer, the Supreme Court recognized that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828-29 (citing

14

Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976)). Suits against prison officials for failure to protect must satisfy a subjective requirement. Id. at 837-38. Specifically, the Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments.". . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id.

"Even when an officer is not a participant in the excessive force, he can still be liable if he fails to take reasonable steps to protect the victim." Ledlow v. Givens, No. 12-12296, 2012 WL 6176471, at *4 (11th Cir. Dec. 12, 2012) (per curiam) (not selected for publication in the Federal Reporter) (citation omitted), cert. denied, 133 S.Ct. 2802 (2013); see Keating v. City of Miami, 598 F.3d 753, 765 (11th Cir.), cert. dismissed, Timoney v. Keating, 131 S. Ct. 501 (2010) (finding a supervisor may be liable under a theory of supervisory liability if he has the ability to prevent or discontinue a known constitutional violation and then fails to exercise his authority to stop the constitutional violation).

15

In ruling on a motion for summary judgment, a court must "constru[e] the facts and draw[] all reasonable inferences therefrom in the light most favorable to the non-moving party." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005) (citing Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966 (11th Cir. 2002)). Upon review, Plaintiff satisfies the physical injury requirement. The medical documents show that he had a severely lacerated right ear that required extensive medical treatment. P. Ex. H. It also shows, drawing all reasonable inferences in the light most favorable to Plaintiff, that Plaintiff notified the Defendants that there was animosity between Plaintiff and inmate Harrell, that inmate Michael McMillon notified Defendants of the animosity between Plaintiff and inmate Harrell, that Plaintiff notified the Defendants that he feared there would be an attack if he and Harrell were placed in the day room together, that Plaintiff and inmate Harrell were placed together in the day room despite these warnings, and that no officer intervened during the attack but some officers passively watched or ignored the confrontation (or left the area), waiting to enter the day room after the fight was over.

Thus, according to Plaintiff's version of the events, Defendants were placed on notice of previous problems between Plaintiff and inmate Harrell and Harrell's recent threat to assault Plaintiff. In addition, based on Plaintiff's version of the

16

events, Defendants placed Plaintiff in a vulnerable position, subject to being attacked. Finally, based on Plaintiff version of the facts, Defendants failed to respond appropriately to Plaintiff being attacked by watching the attack or ignoring the incident without attempting to protect Plaintiff or by leaving the area and allowing the attack to take place, knowing that Plaintiff had been threatened by inmate Harrell and knowing Plaintiff was placed in a vulnerable position in the locked day room with an inmate that had recently threatened him with harm.

In this case, the parties have contradictory versions of what happened on July 24, 2009. Defendant Olive contends that as soon as he saw Plaintiff and inmate Harrell fighting in the day room he ordered both inmates to cease fighting and they complied. On the other hand, Plaintiff asserts that Defendant Olive encouraged the attack and stood by and watched the attack, moving from the day room door to a side window. Further Plaintiff claims that Defendant Olive did not take any action during the fight, and inmate Harrell quit fighting only upon seeing Plaintiff's severely lacerated ear.

Defendants Hodges and Thurman assert that they were not present on Quad 2 during the fight and did not witness the fight. Plaintiff, on the other hand, claims that Defendant Hodges told Defendant Olive to move around and not stand at the door watching the fight. Plaintiff claims that Defendant Hodges incited the

17

fight and was well aware of the threat that inmate Harrell posed to Plaintiff as Plaintiff advised Defendant Hodges of the threat. Plaintiff states that Defendant Thurman was notified that there had been an argument between inmate Harrell and Plaintiff the night before the incident. Plaintiff claims that Defendant Thurman was present when Officer Hodges said Plaintiff was going to get it and Defendant Thurman was actively looking for someone to fight Plaintiff. Plaintiff further alleges that Defendants Hodges, Thurman and Olive had not left the wing when the attack occurred.

Summary judgment is appropriate if the pleadings and other evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. But, of import regarding Defendant Griffin, "[t]he moving party bears the initial burden of showing . . . that there are no genuine issues of material fact[.]" Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1313-14 (11th Cir. 2007) (citation omitted). If the moving party satisfies this burden, then "the non-moving party must . . . go beyond the pleadings . . . [to] designate specific facts showing that there is a genuine issue for trial." Id. (citation and quotation marks omitted). Here, Defendant Griffin has not discharged his initial burden of showing that there are no genuine issues of material fact. Therefore, at this juncture, Defendant Griffin is not entitled to summary judgment.

18

With respect to the remaining Defendants, Hodges, Thurman and Olive, the parties have submitted affidavits to support their respective positions.   Additionally, Plaintiff has submitted medical records documenting the severe laceration injury to his ear.   Accordingly Defendants' Motion for Summary Judgment will be denied with respect to Plaintiff's Eighth Amendment claim because there are genuine issues of material fact that prevent the entry of summary judgment at this stage of the proceeding.[8]

## B.  Conspiracy

Plaintiff claims that the Defendants entered into a conspiracy to deprive Plaintiff of his right to be free from physical assault from another inmate.   Amended Complaint at 8, 15.

> A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right. GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted). A plaintiff

---

[8] All of the Defendants contend that they are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim.   See Defendants' Motion for Summary Judgment at 19-20; Griffin's Motion for Summary Judgment at 11-15.   Because there are material issues of fact with respect to this Eighth Amendment claim, the Court cannot address whether Defendants are entitled to qualified immunity until these disputed facts have been resolved.

> claiming a § 1983 conspiracy must prove the
> defendants "reached an understanding" to
> violate the plaintiff's constitutional rights.
> Bailey v. Bd. of Cnty. Comm'rs of Alachua
> Cnty., 956 F.2d 1112, 1122 (11th Cir. 1992)
> ("[T]he linchpin for conspiracy is
> agreement."). Factual proof of the existence
> of a § 1983 conspiracy may be based on
> circumstantial evidence. Burrell v. Bd. of
> Trs. of Ga. Military Coll., 970 F.2d 785, 789
> (11th Cir. 1992).

Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010).

Defendants assert that Plaintiff's conspiracy claim must fail because of the intracorporate conspiracy doctrine, and this Court agrees.  Since all of the Defendants were Florida Department of Corrections' (FDOC) employees at the time of the incident, "[t]he 'conspiracy' occurred only within a government entity[.]" Rehberg v. Paulk, 611 F.3d 828, 854 (11th Cir. 2010), aff'd by 132 S.Ct. 1497 (2012).  Thus, the intracorporate conspiracy doctrine bars the conspiracy claim against Defendants Hodges, Olive, and Thurman.

Initially, in order to establish a § 1853(3) conspiracy claim, Plaintiff has to show two or more persons entered an agreement to deprive him of his civil rights.  42 U.S.C. § 1853(3).  Here, Plaintiff claims that three FDOC's employees conspired to deprive him of his constitutional rights.  The employees of the FDOC "constitute a single legal entity that cannot conspire with itself." Dickerson v. Alachua Cnty. Comm'n., 200 F.3d 761, 768 (11th Cir.), cert. dismissed, 530 U.S. 1285 (2000).  "This doctrine

has been applied not only to private corporations but also to public, government entities." Hollins v. Fulton Cnty., 422 F. App'x 828, 833 (11th Cir.) (per curiam) (quoting Dickerson, 200 F.3d at 767), cert. denied, 132 S.Ct. 586 (2011). Of import, the doctrine provides "that employees of a public, governmental entity or a private corporation, when acting as agents of the entity or corporation, 'are deemed incapable of conspiring among themselves or with the corporation.'" McLemore v. Cruz, No. 6:10-cv-766-Orl-28KRS, 2011 WL 4101729, at *4 (M.D. Fla. Sept. 14, 2011) (quoting Dickerson, 200 F.3d at 767) (a case claiming co-conspirators, correctional officers at the Orange County Jail, created a "fight-club" at the jail staging inmate fights).

As recently noted by the United States District Court for the Northern District of Florida, when all of the alleged conspirators are employees of the FDOC, and no outsiders are involved, the intracorporate conspiracy doctrine comes into play. Myers v. Fla., No. 5:12-cv-259-RS-EMT, 2014 WL 68067, at *10 (N.D. Fla. Jan. 8, 2014). Here, the job-related functions of the correctional officers were "well within Defendants' scope of employment as FDOC employees." Claudio v. Crews, No. 5:13-cv-345-MP-EMT, 2014 WL 1758106, at *6 (N.D. Fla. May 1, 2014). Indeed, the Defendants were pulling inmates from their cells for a mental health group session, securing the inmates with restraint devices, and escorting

21

them to their destination.   In this instance, Defendants were undoubtedly performing job-related duties.

As noted in <u>Grider</u>, 618 F.3d at 1261,

> We recognize that one might reasonably believe that violating someone's constitutional rights is never a job-related function or within the scope of a [correctional] officer's employment. However, the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally.   The scope-of-employment inquiry is whether the employee [correctional] officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business.

Upon review, the intracorporate conspiracy doctrine bars Defendants from being held liable for conspiring to deprive Plaintiff of his right to be free from physical assault from another inmate.  Therefore, Defendants Hodges, Olive, and Thurman's Motion for Summary Judgment is due to be granted as to Plaintiff's conspiracy claim against these Defendants.

Therefore, it is now

**ORDERED**:

1.   Defendants' Joint Motion to Strike (Doc. 126), requesting the Court strike the unsworn answers of James McCallister, Edward Brown, Ramon Maldonado, and Brian Baldwin to written deposition questions, is **GRANTED**.  Therefore, Plaintiff's exhibits B, C, D, and E are hereby **stricken**.  P. Ex. B, C, D & E.

2.   Defendants' [Thurman, Olive, and Hodges] Motion for Summary Judgment (Doc. 113) is **GRANTED** only to the extent that Plaintiff's conspiracy claim is hereby **DISMISSED**.  Judgment to that effect will be withheld pending adjudication of the action as a whole.  See Fed. R. Civ. P. 54.  Defendants' Motion for Summary Judgment (Doc. 113) is **DENIED** in all other respects.

3.   Defendant' Maurice Griffin's Motion for Summary Judgment (Doc. 112) is **GRANTED** only to the extent that Plaintiff's conspiracy claim is hereby **DISMISSED**.  Judgment to that effect will be withheld pending adjudication of the action as a whole.  See Fed. R. Civ. P. 54.  Defendant Griffin's Motion for Summary Judgment (Doc. 112) is **DENIED** in all other respects.

**DONE AND ORDERED** at Jacksonville, Florida this 16th day of September, 2014.

_____
BRIAN J. DAVIS
United States District Judge

sa 9/15
c:
Jerry Davis
Counsel of Record